ETHAN R. PLAUT
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 3447
Great Falls, MT 59403
119 First Ave. N., Suite 300
Great Falls, MT  59401
Phone:	(406) 761-7715
Fax:	(406) 453-9973
E-mail:	ethan.plaut@usdoj.gov

ATTORNEY FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| UNITED STATES OF AMERICA, Plaintiff, vs. ELIJAH JAMES RIDESHORSE, Defendant. | CR 20-87-GF-BMM<br><br>OFFER OF PROOF |
|---|---|

## THE CHARGES

The defendant, Elijah James Rideshorse, is charged in the indictment with conspiracy to distribute and to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846 (Count I); possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count

1

II); and felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1) (Counts III and IV). The indictment also includes a forfeiture allegation.

## PLEA

The defendant, Elijah James Rideshorse, will enter a voluntary plea of guilty to the crimes of possession with intent to distribute methamphetamine (Count II) and felon in possession of a firearm and ammunition (Count IV). He will also admit the forfeiture allegation.

The United States presented any and all formal plea offers to the defendant in writing. The motion for change of plea filed with the Court represents, in the government's view, the most favorable disposition of the case against the defendant. *See Missouri v. Frye*, 566 U.S. 134 (2012). There was one formal plea agreement presented to the defendant.

## ELEMENTS

The defendant will plead guilty because the defendant is in fact guilty of the charges contained in counts II and IV of the indictment:

### Count II

- **First**, the defendant knowingly possessed methamphetamine;

- **Second**, the defendant possessed it with the intent to distribute it to another person; and

- **Third**, the amount of methamphetamine equaled or exceeded 50 or

more grams of actual methamphetamine.

It does not matter whether the defendant knew that the substance was methamphetamine. It is sufficient that the defendant knew that it was some kind of a federally controlled substance. The government does not have to prove that the defendant knew the quantity of methamphetamine.

To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of methamphetamine to another person, with or without any financial interest in the transaction.

A person has possession of something if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it. More than one person can be in possession of something if each knows of its presence and has the power and intention to control it.

### Count IV

- **First**, the defendant knowingly possessed a firearm;

- **Second**, the firearm had been shipped or transported from one state to another, or between a foreign nation and the United States;

- **Third**, at the time the defendant possessed the firearm, the defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year; and

- **Fourth**, at the time the defendant possessed the firearm, the defendant

knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year.

## PENALTY

In this case the charge of possession with intent to distribute methamphetamine carries a mandatory minimum punishment of ten years of imprisonment to a maximum punishment of a life term of imprisonment, a $10,000,000 fine, at least five years of supervised release, and a $100 special assessment. The charge of felon in possession of a firearm carries a punishment of up to ten years imprisonment, a $250,000 fine, and three years of supervised release.

## ANTICIPATED EVIDENCE

If this case were tried in the United States District Court, the United States would prove the following:

1. On August 23, 2020, Blackfeet Law Enforcement Services responded to a call about a suspicious vehicle. When the matching vehicle was located, it sped away, leading officers on a high-speed pursuit into Cut Bank. Officers observed a female operator but lost sight of the vehicle. The vehicle was located, parked and empty near Cut Bank High School. John Doe 1 was located walking nearby. He was identified and arrested on a pre-existing warrant. He had a bag of suspected methamphetamine concealed on his person.

2. The vehicle was searched pursuant to a warrant. In the front passenger area, there was a box of ammunition and a small bag of suspected meth, as well as a unique Adidas fanny pack with empty plastic bags inside. In the center console, another larger bag of meth was located, as well as a loaded .40 caliber magazine. There was also a receipt for .40 caliber ammunition and an empty box for a specific .40 caliber pistol, both identified as having come from Norman's Outdoor Sports in Cut Bank.

3. FBI Task Force Officer Joshua Simonds reviewed records from Norman's Outdoor Sports that showed John Doe 2 had purchased the pistol the day prior to the vehicle pursuit. Security footage from that purchase showed that John Doe 1, John Doe 2, and the defendant had been together at the time. The defendant had been wearing a fanny pack around his neck that matched the pack recovered from the vehicle on August 23rd.

4. John Doe 2 was interviewed. He admitted buying the handgun from Norman's. He identified the defendant and said he knew him as "Flaco" and he knew John Doe 1 as "Gordo." He said that, after he had purchased the gun at Norman's, Flaco and Gordo had taken it from him. He said the next day they were coming to see him again. He was afraid of them, so he made the report of the suspicious vehicle to law enforcement, which had led to the pursuit. He said that, on multiple occasions, Flaco had given him meth from a pack that he wore around

his neck.

5. TFO Simonds obtained footage from Cut Bank High School, which captured the vehicle parking at the end of the vehicle pursuit on August 23rd. The footage showed Jane Doe 1 had fled from the driver's door, John Doe 1 had fled from a rear passenger door, and a male who matched the defendant's general physical description had fled from the vehicle before the other two occupants.

6. TFO Simonds obtained search warrants for two phones, one of which was found in the vehicle and one of which was found on John Doe 1's person. He also used search warrants to obtain records from Facebook, including records for an account identified by witnesses as belonging to the defendant.

7. The records from that Facebook account included numerous images of the defendant that he appeared to have taken himself, as well as audio messages sent to people in the defendant's voice. The account was registered in his name and with the phone number for one of the phones recovered on August 23rd. That same phone had sent numerous messages identifying the phone owner as "Flaco." In photos recovered from that phone and the Facebook account, the defendant was wearing the fanny pack recovered from the vehicle.

8. The records from his Facebook account included numerous messages about drug transactions and, specifically, about the events of August 23rd. For example, in messages sent from the account on or about August 21, 2020, the

defendant's account sent messages indicating he was traveling eastward from Idaho into Montana. Someone asked him "how much for a zip" and his response was "No zips we doing all 50$'s." In another thread on or about August 20, 2020, someone messaged him "I need ur prices on clear." He responded by giving different prices for a "ball," a "g," a "zip trip," a "qp," and a "Tshirt," all of which are slang terms for various quantities of meth.

9. In a Facebook conversation with Jane Doe 1, the defendant conversed about dealing drugs on August 23rd. Then the messages showed the two of them had met up on that date. In later messages, they talked about him having provided her with two ounces during a vehicle pursuit and discussed details of them both being in the pursuit and how he would get those two ounces back from Jane Doe 1. The defendant's Facebook page also included an audio message he sent someone shortly after the vehicle pursuit in which he stated that he and Gordo had been in a high-speed chase and someone had "ratted" them out.

10. Jane Doe 1 was interviewed. She stated that John Doe 1, the defendant, and she, had been in the August vehicle pursuit, with her driving. She said during the pursuit the defendant had given her and John Doe 1 meth to conceal. She said all three of them concealed drugs and fled on foot once she parked the vehicle in Cut Bank. She said the defendant deals meth and the drugs in the vehicle that day had belonged to him.

11. On October 12, 2020, the Billings Police Department attempted to stop a vehicle for traffic infractions. It fled, leading officers on a high-speed pursuit. The vehicle continued to flee after officers spiked its tires. It was disabled when intentionally struck by a Montana Highway Patrol vehicle as it approached school buses and heavy traffic. The driver fled on foot, but was apprehended and identified as the defendant. He stated he should have shot at the police. There were three female passengers in the vehicle, one aged 14 and another aged 15. Near where he had exited the vehicle, officers found a pistol on the road. An officer had seen the defendant drop that gun as he had exited the vehicle. Inside the vehicle was a Smith & Wesson AR-style rifle with a 40-round magazine.

12. The defendant was interviewed about this October incident. He said someone gave him that vehicle the night prior and paid him in cash and "dope" to go drive it around. He initially denied he had possessed any firearms. He then said that someone gave him guns to go drive the vehicle around and admitted to having control over the rifle and the pistol.

13. The defendant was later interviewed by the FBI about the August incident. He initially claimed not to have been in Montana at the time. Then he stated that he had been in Cut Bank on the day in question, but he denied being in any vehicle pursuit.

14. The two guns recovered from the vehicle pursuit on October 12, 2020

were (1) a Springfield Armory, model XDS, 9mm semi-automatic pistol with serial number S3629007, and (2) a Smith & Wesson, model M&P 15, 5.56 mm, semi-automatic rifle with serial number SM66799. Both guns were manufactured outside the state of Montana.

15. Rideshorse was convicted on April 7, 2014, in Montana's Third Judicial District Court, in Powell County, Cause No. DC-13-34 of Assault with a Weapon and Assault on a Peace Officer. He was sentenced to 15 years with 10 suspended. Conditions imposed included a prohibition on firearms. He signed a form on March 27, 2020, acknowledging that he was prohibited from possessing firearms or ammunition. He was on supervision for this state offense at all relevant times.

16. The DEA analyzed the suspected methamphetamine recovered from the vehicle console and from the person of John Doe 1 after the August 23rd vehicle pursuit. The drugs recovered from the vehicle console consisted of 79 grams of 99% pure meth, meaning 78 grams +/- 5 grams of pure methamphetamine. The drugs recovered from the person of John Doe 1 consisted

//

//

//

of 68 grams of 99% pure meth, meaning 67.3 grams +/- 4.1 grams of methamphetamine.

DATED this 23rd day of April 2021.

LEIF M. JOHNSON
United States Attorney

*/s/ Ethan R. Plaut*
ETHAN R. PLAUT
Assistant U.S. Attorney